Dan **HEFFERNAN**, Plaintiff,

v.

**PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY,**
Defendant.

No. 98–2052–JWL.

United States District Court,
D. Kansas.

Feb. 19, 1999.

---

Mark A. Corder, Olathe, KS, for Dan
Heffernan, plaintiff.

Angela D. Gupta, Office of United States Attorney, Kansas City, KS, William C. Martucci, Tracy McFerrin Foster, Spencer, Fane, Britt & Browne, Kansas City, MO, for Provident Life and Accident Insurance Company, defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff Dan Heffernan filed suit against defendant Provident Life & Accident Insurance Company alleging violations of the Americans with Disabilities Act. This matter is presently before the court on defendant's motion for summary judgment (doc. # 27). As set forth in more detail below, defendant's motion for summary judgment is granted and plaintiff's complaint is dismissed in its entirety.

## I. Facts[1]

Plaintiff began his employment with defendant in 1985 as a consultant in defendant's Memphis office. In 1988, plaintiff transferred to defendant's Kansas City office and became the Branch Manager of that office. As Branch Manager, plaintiff's primary responsibilities included developing a book of business by calling on brokers and making them aware of defendant and its products. Although the Kansas City office had once staffed several employees under plaintiff, plaintiff was the only full-time employee in the Kansas City office from June 1996 through April 1, 1997.

In early 1996, defendant announced plans to merge with the Paul Revere Life Insurance Company ("Paul Revere"). R. Kiah Townsend, a Provident employee, was selected as the post-merger Regional Manager for the Heartland region, which included Kansas City, St. Louis, Phoenix, Salt Lake City and Denver. David Beebe, a Paul Revere employee, was selected as the post-merger Regional Manager for the Chicago region. Prior to the merger, both defendant and Paul Revere had offices in Kansas City. The territory covered by defendant's Kansas City office included Nebraska, Kansas, Western Iowa (including Des Moines) and Western Missouri. In Paul Revere's territorial scheme, Nebraska and Iowa were covered by Paul Revere's Des Moines, Iowa office, an office that remained open after the merger and reported to the Chicago regional office. It is uncontroverted that Paul Revere, prior to the merger, was engaged in greater amounts of business and had a greater presence in Nebraska than defendant Provident.

During the merger planning process, Nebraska was initially included as part of the territory for the post-merger Kansas City office, which reported to the Denver regional office, as it had been with defendant Provident pre-merger. From the beginning of the merger discussions, however, there was some question as to whether Nebraska would remain part of the Denver region or be transferred to the Chicago region under the Des Moines office, as it had been with Paul Revere.[2]

1. In accordance with the applicable summary judgment standard, the facts are uncontroverted or related in the light most favorable to plaintiff.

2. Mr. Beebe testified to this fact in his affidavit. In an effort to controvert this fact, and all other facts contained in Mr. Beebe's affidavit, plaintiff emphasizes that defendant has failed to corroborate the facts contained in Mr. Beebe's affidavit with any documents. In essence, plaintiff argues that the absence of any supporting documentation raises the inference that Mr. Beebe has lied in his affidavit. Significantly, however, plaintiff has failed to offer any evidence from which a jury

could reasonably infer that the facts contained in Mr. Beebe's affidavit do not represent the truth. In the absence of such evidence, the court is left only with plaintiff's speculation that Mr. Beebe's affidavit is untruthful. As the Seventh Circuit has stated, "[s]peculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931–32 (7th Cir.1995). *See also Weisbrot v. Medical College of Wisconsin*, 79 F.3d 677, 682 (7th Cir.1996) (summary judgment is proper where no rational factfinder could believe that the employer lied about its proffered reasons for dismissal).

In September 1996, Mr. Townsend interviewed plaintiff and Ron Bennett, the Manager of Paul Revere's Kansas City office, for the position of Manager of defendant's post-merger Kansas City office. Mr. Townsend selected Mr. Bennett for the position and he informed Mr. Bennett and plaintiff of the decision in October or November 1996. When plaintiff learned that he was not selected as the post-merger Branch Manager of the Kansas City office, he began inquiring whether he could obtain a separation package from defendant. In essence, plaintiff believed that he was not wanted by the people in the Kansas City office (i.e., the Paul Revere personnel). Plaintiff and defendant could not agree on the terms of a separation package.

In January 1997, Mr. Townsend received the sales quota for his region. He assigned quotas to the individual offices in his territory, including the Kansas City office, and assigned individual salespersons' quotas shortly thereafter. In assigning quotas, however, Mr. Townsend set the quota for Nebraska separately from the quota for the rest of the Kansas City office because he knew that there was a possibility that the Nebraska territory would be transferred to the Des Moines office in the Chicago region. According to Mr. Townsend, the transfer of the Nebraska territory was discussed heavily in February and March 1997.[3] At that time, Mr. Townsend strongly suspected that the territory would be transferred.

During this time frame, it was decided that some of the existing career agents from Paul Revere would become independent Regional Marketing Organizations (RMOs). One RMO was established in Cedar Rapids, Iowa, to service the eastern half of Iowa. The establishment of this RMO left the Des Moines office with only the western half of Iowa. According to Mr. Beebe, this territory was insufficient to keep the Des Moines office viable.[4] Mr. Beebe expressed concern to Jeff Olingy, Executive Vice President of Sales, that the Des Moines office did not have enough territory after losing both Nebraska and the eastern half of Iowa. Mr. Beebe suggested that Nebraska be transferred back to the Des Moines office. Mr. Beebe made a formal request along these lines no later than April 1, 1997—the date the merger became official. Mr. Olingy told Mr. Beebe to work out the Nebraska territory reassignment with Mr. Townsend, and they jointly agreed to the transfer. This decision was subject to the final approval of defendant's home office. Sometime in April, Mr. Townsend learned that the transfer decision had been approved by the home office.

Plaintiff began reporting to the merged Kansas City office on April 1, 1997. On April 8 or 9, 1997, plaintiff informed Mssrs. Townsend and Bennett that he had recently learned that he had a heart condition—a "serious cardiovascular issue." Specifically, plaintiff told Mssrs. Townsend and Bennett that he had just spent time with a cardiologist and had

---

**3.** As with Mr. Beebe's affidavit, plaintiff attempts to controvert this portion of Mr. Townsend's testimony based on the absence of any documents corroborating the testimony. Plaintiff, however, has not offered any evidence that casts doubt on Mr. Townsend's testimony. Thus, for the same reasons discussed in note 2, plaintiff's efforts to controvert this fact are unavailing.

**4.** In an effort to controvert this fact, plaintiff contends that Mr. Beebe's statement about the viability of the Des Moines office "is an expression of opinion for which no supporting foundation is laid." Although the nature of

plaintiff's argument is somewhat unclear, Mr. Beebe's affidavit clearly indicates that the viability of the Des Moines office would be a matter about which Mr. Beebe had personal knowledge and, in fact, some level of expertise. As set forth in his affidavit, Mr. Beebe served as the Regional Manager for the Chicago region, which included the Des Moines office. Moreover, plaintiff has failed to specifically controvert Mr. Beebe's testimony. As such, the court rejects plaintiff's attempt to create a genuine issue of material fact based on plaintiff's belief that Mr. Beebe's "expression of opinion" is somehow inadequate to support defendant's motion.

completed a heart catheter, a stress EKG, and a thallium test. Plaintiff further advised Mssrs. Townsend and Bennett that he had two-vessel coronary artery disease, thickening of the heart wall, significant blood pressure issues, and a genetic disposition to cholesterol problems. Finally, plaintiff reported that he was still undergoing certain tests, but that his condition "didn't look good" and that he was concerned he might have to go on disability.

Plaintiff testified that Mssrs. Bennett and Townsend, upon learning about plaintiff's condition, were "very considerate" and that they told plaintiff they "would do everything they could" to work with plaintiff. Mr. Townsend also advised plaintiff to take a week off from work. According to Mr. Townsend, he did not consider the possibility that plaintiff's condition could potentially interfere with his ability to work because it was very early in the testing process and plaintiff appeared healthy.[5]

After taking a week off, plaintiff returned to work. He did not have any specific conversations with Mr. Townsend or Mr. Bennett about his medical condition after the initial discussion in early April. When Mssrs. Bennett and Townsend occasionally asked how plaintiff was doing, plaintiff responded that he was "doing okay" and that he did not have a "90–day death sentence or anything." Moreover, Mssrs. Bennett and Townsend never had any specific, detailed discussions about plaintiff's health, other than expressing general concern that he take care of himself, seek medical care, and follow his doctor's advice.

On April 18, 1997, Mr. Bennett made broker reassignments within the Kansas City office, based upon which salesperson had done the most business with any given broker or producer. As a general rule, the salesperson who had done the most business with a broker or producer was the person who retained the relationship. The majority of plaintiff's brokers in Kansas and Missouri were reassigned to other salespersons. Plaintiff planned to concentrate his sales efforts in Nebraska. At the time Mr. Bennett reassigned the brokers, he was not aware that Nebraska would be transferred to the Chicago region. On April 25, 1997, Mr. Townsend informed Mr. Bennett and plaintiff that the Nebraska territory had been reassigned to the Chicago region.

Over the next several months, plaintiff complained to Mr. Townsend about his reduced territory and the failure of defendant to reduce plaintiff's sales quota. Mr. Townsend told plaintiff that he would make an adjustment to plaintiff's sales quota once formal, written verification of the territory change was made and the quota was moved out of the Denver territory. He specifically told plaintiff that the quota adjustment would be made before bonuses were paid out at the end of July.[6]

On July 9, 1997, plaintiff resigned his employment with defendant. At the time of his resignation, defendant had not made any adjustments to plaintiff's assigned territory or quota. In this suit, plaintiff claims that defendant transferred the Nebraska territory and then refused to adjust his sales quota because of plaintiff's heart

---

5. Plaintiff attempts to controvert Mr. Townsend's testimony by arguing that the testimony is "simply unbelievable" and "ludicrous" in light of the information that plaintiff had provided to Mr. Townsend about his condition. To avoid summary judgment, however, plaintiff must come forward with evidence showing that a material issue of fact remains in dispute. Plaintiff cannot manufacture a genuine issue by simply hoping that the jury may disbelieve Mr. Townsend at trial. *See Barge v. Anheuser–Busch, Inc.,* 87 F.3d 256, 260 (8th Cir.1996).

6. Although plaintiff claims that Mr. Townsend never told him that he would make an adjustment to plaintiff's sales quota, he fails to support his assertion with any citation to the record and the court is unwilling to search the record in an effort to uncover facts to support plaintiff's assertion. *See Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 672 (10th Cir.1998) (where plaintiff has not adequately met his burden of presenting specific facts by reference to exhibits and the existing record, the Circuit will not reverse the district court for failing to uncover them itself).

condition. He further alleges that he was constructively discharged from his employment.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505.

Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Discussion

Plaintiff alleges that defendant transferred the Nebraska territory to the Chicago region and then refused to reduce plaintiff's assigned sales quota based on plaintiff's heart condition—a condition that, according to plaintiff, defendant regarded as a disability. As set forth in more detail below, plaintiff has not established a prima facie case of disability discrimination. Moreover, even assuming he had established a prima facie case, plaintiff has not come forward with sufficient facts from which a reasonable jury could conclude that defendant's proffered reasons for its employment decisions were pretextual. Accordingly, the court grants defendant's motion for summary judgment on plaintiff's claims.

■ The ADA prohibits a covered entity from discriminating against a "qualified individual with a disability" because of the individual's disability with respect to terms, conditions, and privileges of employment. *See* 42 U.S.C. § 12112(a). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Pack v. Kmart Corp.,* 166 F.3d 1300, 1302 (10th Cir.1999) (quoting 42 U.S.C. § 12111(8)

and citing *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995)). Thus, to establish a prima facie case under the ADA, plaintiff must demonstrate that: (1) he is disabled within the meaning of the ADA; (2) he is qualified, that is, with or without reasonable accommodation, he is able to perform the essential functions of the job; and (3) he was discriminated against because of his disability. *See Pack,* 166 F.3d at 1302 (citing *Siemon v. AT&T Corp.,* 117 F.3d 1173, 1175 (10th Cir.1997); *White,* 45 F.3d at 360–61); *Aldrich v. Boeing Co.,* 146 F.3d 1265, 1269 (10th Cir.1998) (citing same), *petition for cert. filed,* 67 USLW 3376 (Nov. 23, 1998) (No. 98–859).

■ Once plaintiff establishes his prima facie case, the burden shifts to defendant to offer a legitimate, nondiscriminatory reason for its employment decision. *See Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *EEOC v. Flasher Co.,* 986 F.2d 1312, 1317–19 (10th Cir.1992)). If defendant comes forward with a nondiscriminatory reason for its actions, the burden then reverts to plaintiff "to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." *Id.* (citing *Ingels v. Thiokol Corp.,* 42 F.3d 616, 622 (10th Cir.1994)). If plaintiff proffers such evidence, the motion for summary judgment must be denied. *Id.*[7]

As set forth below, plaintiff has not produced sufficient evidence with respect to the first and third elements of his prima facie case. Moreover, even assuming plaintiff had established a prima facie case of disability discrimination, he nonetheless has failed to come forward with facts from which a reasonable factfinder could conclude that defendant's proffered reasons for its employment decisions were pretextual. Accordingly, summary judgment in favor of defendant is appropriate.

### A. The "Disabled" Requirement

■ Under the ADA, a "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Pack v. Kmart Corp.,* 166 F.3d 1300, 1302 (10th Cir.1999) (quoting 42 U.S.C. § 12102(2)). Plaintiff relies upon subsection (C) of § 12102(2) in an effort to establish that he is disabled under the ADA.[8] The regulations implementing the ADA explain that a person is "regarded as" having an impairment that

---

7. The *McDonnell Douglas* burden-shifting analysis is appropriate in disability discrimination cases where, as here, the plaintiff has no direct evidence of discrimination and the employer disclaims reliance on the plaintiff's disability for an employment decision. *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 n. 3 (10th Cir.1997).

8. In his papers, plaintiff concedes that Tenth Circuit case law precludes him from stating a claim for disability discrimination based on subsection (A) of § 12102(2) because his condition is adequately controlled with medication. *See Sutton v. United Air Lines, Inc.,* 130 F.3d 893, 902 (10th Cir.1997) (determination of whether individual's impairment substantially limits major life activity should take into consideration mitigating or corrective measures utilized by individual), *cert. granted,* ⎯ U.S. ⎯, 119 S.Ct. 790, 142 L.Ed.2d 653 (1999). In light of the Supreme Court's grant of certiorari on this issue, plaintiff has attempted to preserve this claim. Defendant argues that plaintiff failed to preserve this claim in the pretrial order and, in any event, cannot establish that he has a disability within the meaning of subsection (A) of § 12102(2). Resolution of these issues is unnecessary. Even if plaintiff could establish that his heart condition constitutes a disability under subsection (A), the court would nonetheless grant defendant's motion for summary judgment for the same reasons summary judgment is appropriate on plaintiff's claim under subsection (C)—plaintiff's failure to establish any connection between defendant's employment decisions and his heart condition and plaintiff's failure to come forward with any evidence that defendant's proffered reasons for its employment decisions are pretextual.

substantially limits a major life activity if he or she

> (1) has a physical or mental impairment that does not substantially limit major life activities but *is treated* ... as constituting such limitation;
>
> (2) has a physical or mental impairment that substantially limits major life activities only *as a result of the attitudes* of others toward such impairment; or
>
> (3) has none of the impairments defined (in the regulations) but is treated ... as having a substantially limiting impairment.

*MacDonald v. Delta Air Lines, Inc.*, 94 F.3d 1437, 1444 (10th Cir.1996) (quoting and adopting 29 C.F.R. § 1630.2(*l*)(1)–(3)). Thus, " 'a person is "regarded as having" an impairment that substantially limits the person's major life activities when other people treat the person as having a substantially limiting impairment,' regardless of whether the individual actually has an impairment." *Sutton v. United Air Lines, Inc.*, 130 F.3d 893, 903 (10th Cir.1997) (quoting *MacDonald*, 94 F.3d at 1444 (quoting *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir.1995))), *cert. granted on different issue*, —— U.S.——, 119 S.Ct. 790, 142 L.Ed.2d 653 (1999). In essence, the "focus is on the impairment's or the perceived impairment's effect upon the attitudes of others." *Id.*

■ Construing the facts in a light most favorable to plaintiff, the court concludes that he has not produced evidence from which a reasonable factfinder could conclude that defendant or, in particular, Mssrs. Townsend and Bennett regarded his heart condition as substantially limiting any of his major life activities, including his ability to work.[9] In order to establish a "disability" under the "regarded as" prong of the ADA with respect to the major life activity of working, plaintiff must establish that defendant regarded him as substantially limited in his ability to perform either a class of jobs or a broad range of jobs in various classes. *Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 612 (10th Cir.1998) (quoting *Sutton*, 130 F.3d at 904). He cannot make this showing.

■ Plaintiff has presented no evidence whatsoever that defendant believed plaintiff's heart condition significantly restricted his ability to perform either a class of jobs or a broad range of jobs in various classes. In his papers, plaintiff argues that Mssrs. Townsend and Bennett knew plaintiff had a serious heart condition and, based on this fact, that a reasonable jury could infer that defendant regarded plaintiff as unable to perform jobs involving "strenuous physical activity" and jobs requiring nonphysical but "stressful" work, including plaintiff's job with defendant. Although plaintiff is entitled to all reasonable inferences in his favor, this principle does not negate the requirement that plaintiff come forward with evidence establishing his prima facie case. Otherwise, if the court were to adopt plaintiff's reasoning, anyone could establish a "disability" under the "regarded as" prong simply by demonstrating that the employer had knowledge of the individual's condition and its potential effects. This interpretation would stand the ADA on its head. *See Sutton*, 130 F.3d at 905. In short, plaintiff has failed to set forth any evidence establishing that he was disabled

---

9. A "major life activity" is a basic activity that the average person in the general population can perform with little or no difficulty. *Pack v. Kmart Corp.*, 166 F.3d 1300, 1303 (10th Cir.1999). Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* (quoting 29 C.F.R. § 1630.2(i); *Sutton v. United Air Lines, Inc.*, 130 F.3d 893, 900 (10th Cir.1997)). Recently, the Supreme Court held that reproduction is a major life activity, see *Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 2204–05, 141 L.Ed.2d 540 (1998), and the Tenth Circuit held that sleeping is a major life activity, *see Pack*, 166 F.3d at 1305. Other activities such as sitting, standing, lifting and reaching may also be considered major life activities. *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1173 (10th Cir.1996) (citing 29 C.F.R. § 1630.2(i)). Here, plaintiff has alleged only that defendant regarded him as substantially limited in the major life activity of working.

under the "regarded as" definition found at § 12102(2)(C). Thus, defendant's motion for summary judgment is granted with respect to this claim. *See Nielsen*, 162 F.3d at 612 (stating that the court "must affirm" the district court's entry of summary judgment on plaintiff's perceived disability claim where plaintiff presented "no evidence whatsoever" that defendant believed any perceived drug addiction on plaintiff's part significantly restricted his ability to perform either a class of jobs or a broad range of jobs in various classes).[10]

### B. The Causation Requirement

■ Even assuming plaintiff could establish that he was "disabled" within the meaning of the ADA, the court would nonetheless grant defendant's motion for summary judgment because plaintiff has not established the third element of his prima facie case—that defendant discriminated against him because of his disability. This element requires plaintiff "to present some affirmative evidence that disability was a determining factor in the employer's decision." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997) (citing *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 59 (4th Cir.1995)). Although this burden is "not onerous," it is also "not empty or perfunctory." *Id.* (citations omitted). In essence, plaintiff must present evidence that, if the trier of fact finds it credible, and the employer remains silent, he would be entitled to judgment as a matter of law. *Id.* Plaintiff has not met his burden.

■ Plaintiff asserts that defendant, because of plaintiff's heart condition, transferred the Nebraska territory to the Chicago region and then failed to reduce plaintiff's assigned quota. The record evidence, construed in the light most favorable to plaintiff, does not support this conclusion. As an initial matter, the record is devoid of any evidence suggesting that Mssrs. Townsend or Bennett were concerned that plaintiff's heart condition would impair his ability to perform his job. In fact, apart from general inquiries about "how he was doing," plaintiff did not have any discussions with either Mr. Townsend or Mr. Bennett about his condition after their initial discussion in early April. Mr. Townsend testified that he did not even consider the possibility that plaintiff's condition could potentially interfere with his ability to work because plaintiff "appeared healthy" and because it was "very early in the testing process." Moreover, it is uncontroverted that Mssrs. Townsend and Bennett had no discussions about plaintiff's condition other than to express general concern that plaintiff take care of himself, seek medical care, and follow his doctor's advice.

Moreover, with respect to defendant's transfer of the Nebraska territory, the uncontroverted evidence demonstrates that defendant's plans to transfer the territory stemmed from its merger with Paul Revere and were in the making well before defendant (and plaintiff) learned about plaintiff's heart condition in April 1997. In fact, when Mr. Townsend assigned sales quotas for the Kansas City office in January 1997, he set the quota for Nebraska separately from the quota for the rest of the office because he knew that there was a possibility that the Nebraska territory would be transferred. Moreover, Mr. Beebe made a formal request prior to April 1, 1997 that the territory be transferred. According to defendant, the reasons for the transfer included the establishment of RMos to service the eastern half of Iowa, and the fact that the Des

---

10. Plaintiff suggests that Mssrs. Townsend and Bennett were concerned that plaintiff might have been unable to continue working for defendant in his current capacity. To the extent plaintiff makes this argument, there is no evidence to support it other than plaintiff's unilateral belief during his discussion with Mssrs. Townsend and Bennett that he "may have to go on disability." In any event, an employer "does not necessarily regard an employee as substantially limited in the major life activity of working simply because it believes that individual is incapable of performing a particular job." *Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 611 (10th Cir.1998) (quoting *Sutton,* 130 F.3d at 904).

Moines office was closer to the two centers of commerce in Nebraska—Lincoln and Omaha. Although plaintiff argues that Mr. Townsend did not agree to transfer the territory until after he had learned about plaintiff's heart condition, the timing of Mr. Townsend's decision, standing alone, does not indicate that defendant transferred the territory because of plaintiff's disability. This is particularly true in light of the uncontroverted evidence that the transfer discussions began long before anyone learned of plaintiff's condition and that Mr. Beebe—who had no knowledge of plaintiff's condition at any time—was the driving force behind the transfer decision.[11]

Similarly, there is no evidence that defendant or, in particular, Mr. Townsend refused to reduce plaintiff's sales quota because of his heart condition. Again, plaintiff has offered only his sheer speculation that Mr. Townsend believed plaintiff's heart condition might impair his ability to work. The record evidence demonstrates only that, in the aftermath of the merger process, adjusting sales quotas was not one of Mr. Townsend's top priorities as compared to other issues that the merger had created. Mr. Townsend testified that an adjustment to his quota would be made before bonuses were paid at the end of July. Plaintiff resigned his employment prior to that time.

In sum, plaintiff has failed to offer any affirmative evidence that his heart condition was a determining factor in defendant's employment decisions. *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997) (citing *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 59 (4th Cir.1995)). Accordingly, plaintiff has not established the third element of his prima facie case and summary judgment is appropriate on this basis, regardless of whether plaintiff has a "disability" within the meaning of the ADA.

### C. The Pretext Analysis

■ Even assuming plaintiff had set forth sufficient evidence with respect to his prima facie case, the court would grant defendant's motion for summary judgment because plaintiff has failed to raise any inference of pretext. As set forth above, plaintiff has offered no evidence that defendant transferred the Nebraska territory or failed to reduce his assigned quota based, even in part, on plaintiff's heart condition. In support of his assertion that defendant's proffered reasons for its employment decisions are pretextual, plaintiff incorporates by reference the arguments he set forth in connection with the third element of his prima facie case—namely, that Mr. Townsend made the decision to transfer the Nebraska territory only after learning about plaintiff's heart condition and that defendant did not transfer any other territories in 1997. As discussed in more detail above, plaintiff's arguments fail to demonstrate that the reasons offered by defendant for transferring the Nebraska territory and failing to reduce plaintiff's sales quota were unworthy of belief. Moreover, the court has been unable to find any evidence in the record suggesting that defendant's proffered reasons for its actions are pretextual. Thus, even if plaintiff could establish a prima facie case of disability discrimination, defendant would still be entitled to summary judgment on his ADA claim. *See Randle v. City of Aurora*, 69 F.3d 441, 451 n. 14 (10th Cir.1995) (explaining that "the defendant would ... be entitled to summary judgment if plaintiff could not offer evidence tending to show the defendant's in-

---

11. Plaintiff contends that no other territory was transferred in 1997 and that this fact supports his assertion that the transfer was based on his heart condition. Although defendant concedes that it did not transfer any other territory in 1997, plaintiff has failed to provide the court with any information with respect to whether other territories could have been or should have been transferred for reasons similar to those offered by defendant in connection with the Nebraska territory. In other words, the mere fact that defendant did not transfer any other territories, standing alone, does not suggest that defendant transferred the Nebraska territory because of plaintiff's heart condition.

nocent explanation for his employment decision was false.").

### D.   Constructive Discharge Claim

Plaintiff also claims that he was constructively discharged from his employment with defendant. A constructive discharge occurs when "the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Sanchez v. Denver Public Schools,* 164 F.3d 527, 534 (10th Cir.1998) (citing *Derr v. Gulf Oil Corp.,* 796 F.2d 340, 344 (10th Cir. 1986)). Because the court has concluded that defendant did not commit any "illegal discriminatory acts" and is entitled to summary judgment on plaintiff's discrimination claim, the court must grant summary judgment in favor of defendant on plaintiff's constructive discharge claim. *See Perez v. Interconnect Devices Inc.,* No. CIV.A. 97–2194–GTV, 1998 WL 781220, at *12–13 (D.Kan. Oct.22, 1998).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. # 27) is **granted** and plaintiff's complaint is dismissed in its entirety.

**IT IS SO ORDERED.**