Richard K. LYONS, Plaintiff

v.

LOUISIANA PACIFIC
CORPORATION,
Defendant

No. CIV.02–029–B–K.

United States District Court,
D. Maine.

Sept. 4, 2002.

Torrey A. Sylvester, Houlton, ME, for Richard K. Lyons, Plaintiff.

Mark K. McDonough, Esq., Cuddy & Lanham, Bangor, ME, for Louisiana Pacific Corporation, Defendant.

## MEMORANDUM OF DECISION [1]

KRAVCHUK, United States Magistrate Judge.

This matter is before the court on Louisiana Pacific Corporation's ("LPC") motion for summary judgment on Counts I (Maine Human Rights Act, 5 M.R.S.A. §§ 4551—4632) and III (The Rehabilitation Act, 29 U.S.C. §§ 701, et seq.) of the complaint.[2] I now **GRANT** LPC's motion and direct that judgment be entered for the defendant.

### Summary Judgment Standard

 Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court views the record on summary judgment in the light most favorable to the nonmovant. *Nicolo v. Philip Morris, Inc.,* 201 F.3d 29, 33 (1st Cir.2000). A contested fact is material if it "has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." *Navarro v. Pfiz-*

---

1. Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge Margaret J. Kravchuk conduct all proceedings in this case, including trial, and to order entry of judgment.

2. LPC previously filed a motion to dismiss Counts II (Americans with Disabilities Act) and IV (Wrongful Termination). That motion was granted by order of this Court on April 5, 2002. The dismissal of Count II was premised upon Lyons' failure to exhaust administrative remedies as required under the Americans with Disabilities Act.

*er Corp.*, 261 F.3d 90, 93–94 (1st Cir.2001)(quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

■ Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has presented evidence of the absence of a genuine issue of material fact, the nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir.1999) (citation and internal punctuation omitted). A party may not create an issue of fact by simply submitting a subsequent contradictory affidavit. *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4–5 (1st Cir.1994) ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed."); *see also Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 20–21 (1st Cir.2000). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re*

*Spigel*, 260 F.3d 27, 31 (1st Cir.2001) (citation and internal punctuation omitted.)

■ Lyons originally brought suit under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Maine Human Rights Act ("MHRA"), 5 M.R.S.A. §§ 4551–4633. This case remains viable under only the MHRA and the Rehabilitation Act, but the standards applicable to each of the three statutes have been viewed as essentially the same. *See Oliveras–Sifre v. P.R. Dep't of Health*, 214 F.3d 23, 25 n. 2 (1st Cir.2000); *Feliciano v. State of Rhode Island*, 160 F.3d 780, 788–89 (1st Cir.1998); *Soileau v. Guilford of Maine, Inc.*, 928 F.Supp. 37, 45 (D.Me.1996), *aff'd*, 105 F.3d 12, 14 (1st Cir.1997). Thus, I have referred to the ADA throughout this discussion because of the applicability of its accompanying body of recent case law, but this summary judgment order in fact applies solely to the Rehabilitation Act and MHRA claims, the ADA claim having been previously dismissed by the court on other grounds.

### Undisputed Material Facts [3]

Richard Lyons was involved in an auto accident in 1975 and as a result of that accident his left leg was shortened by one half inch. After the accident Lyons began wearing a lift in the heel of his left shoe to mitigate this condition. When Lyons was hired by LPC in September, 1982, to work at its mill in Houlton, Maine, he disclosed these facts on his application. Other than

---

**3.** In an interesting departure from the usual summary judgment practice as set forth in Local Rule 56(c) pertaining to the opposing statement of material facts, Lyons has filed a document (Docket No. 16) entitled Lyons Responsive Affidavit with Material Facts at Issue. The document is in affidavit form, signed by Lyons, and consists of seventeen numbered paragraphs, most, but not all, of which contain a record citation. The record citations for ten of the paragraphs consist of Lyons' own deposition. To the extent the deposition differs from or qualifies the affidavit's assertions as argued by LPC, I have treated the deposition testimony as controlling.

his left leg being shorter than his right, the only other problem Lyons has experienced with his legs or ankles is that in 1983 he fractured his right ankle while at LPC working in the mill. He has not received any treatment for that injury since the early 1980's, but he has developed osteoarthritis in his left ankle and received treatment for that condition in February 2000. The treatment consisted of glucosamine medication and by June 2000 Lyons' condition had improved substantially, even as he was doing a lot of walking and ladder climbing in his job.

When asked at his deposition on June 27, 2002, to describe how he was substantially limited in a major life activity, Lyons gave the following answers:

Q. . . . What major life activity are you substantially limited in?

A. I don't feel that I'm limited to anything, but I don't think I could hike up Mount Kathadin or run up and down it, things like that—. As far as any one particular thing that I can't do, I don't— I can't think of any.

Q. You're not substantially limited in walking?

A. Yes, in walking long distances or over a great deal of time that—. I'm always in pain anyways, so it doesn't matter, it's something I have learned to live with. My ankle being shorter than the other, it aches generally most every night, but I don't know as that would be considered not being able to do anything.

Q. Are you able to sleep?

A. Yes, for the most part.

. . . . .

Q. For 18 years while you were at Louisiana Pacific, give or take, I'll ballpark that number, a substantial portion of your day was spent walking, was it not?

A. Yes

(Lyons Dep. at 26–27.)

Lyons agreed that characterizing his condition of having one leg shorter than the other as a "slight medical problem" was an accurate characterization. Although Lyons listed his disability on his 1982 job application, on August 28, 2000, he signed a Confidential Self Identification form to be placed in his personnel file and on that form he was asked if he had a disability and he checked no.

Lyons was employed as an electrician and his job at the plant included moving around the plant troubleshooting electrical problems. It was common for Lyons to be the only electrician on site at the plant during certain shifts. On March 9, 1999, as part of the company's policy Lyons signed a Safe Practices Pledge and was given a Safe Practices Guide. The post March 1999 events are hotly disputed as to what exactly happened and whether Lyons' lack of safety awareness actually caused any harm, but it is sufficient for these purposes to note that the parties agree that there were four incidents at the mill that eventually led to Lyons' termination.

The first incident occurred on August 5, 1999, and involved a fire at the mill. Lyons was the only electrician on duty at the time and he was asked to help combat the fire by reversing a belt motor, an important safety action because it would take combustible material away from the fire site and allow water to be more readily applied to the fire. Lyons was not able to reverse the belt motor until his supervisor arrived and reminded him how to do it. As a result of the incident Lyons was given a corrective form and was suspended for three days with a warning that future corrective actions would result in more discipline, including termination.

The second incident occurred on September 9, 1999, when Lyons fell off a canopy that he had placed his foot on while he attempted to change a light bulb. He fell and required stitches to his arm. Lyons again received a corrective form for the incident. The fall had nothing to do with Lyons pre-existing leg injury. On January 26, 2000, several LPC managers spoke with Lyons to complain about electrical work he performed while wiring an office at the plant. Lyons does not dispute that this meeting occurred and that the LPC managers said he had made mistakes in wiring the office, but he does dispute that errors had been made.

At that meeting Lyons was asked if he had any problems in his personal life that would distract him from his work. Although Lyons denied any such problems, after the meeting he did tell one of the managers that his left ankle had been giving him pain. She advised him to see a doctor about the problem and report back to her. That exchange apparently resulted in the February 2000 treatment for osteoarthritis discussed earlier and Lyons reported back to the manager that the situation had resolved itself. There were no ongoing ankle problems. In his performance review in February of 2000 Lyons and his manager both stated that Lyons needed to be more aware of safety procedures, but Lyons vigorously contests whether he was adequately warned that a non-personal injury incident could result in termination.

The fourth and final incident involving Lyons occurred on September 23, 2000, when Lyons was replacing a mag breaker for a debarker hydraulic motor. In performing this procedure somehow Lyons allowed a hot line to come in contact with the motor, causing damage to equipment and nearly electrocuting himself. No personal injury occurred, but as a result of this incident and the three previous incidents, Lyons was terminated.

During the years that Lyons worked in the mill, the only accommodation related to his leg that he ever sought was that his employer place rubber mats at the work station in the shop attached to the electricians' office where he sometimes worked. Lyons could not remember how frequently he requested this accommodation and could not specify when he requested it, but he indicated that he asked "maybe half a dozen times in the course of a year." There is nothing in the record that suggests that these requests were made in close proximity to the termination or even that they were made during the post March, 1999, time frame. Lyons conceded that he did not spend a lot of his time at this work station and that it would have been impractical to put down rubber mats throughout the entire mill and he never requested that LPC do so. No action was ever taken by the employer regarding the request for rubber mats at the work station and Lyons never made any further formal or written demand regarding this issue.

### Discussion

■ The Rehabilitation Act and the MHRA, like the ADA, prohibit employers from discriminating against a qualified individual with a disability. *See* 42 U.S.C. § 12112(a). Failing to make a reasonable accommodation for a qualified individual falls under the definition of discrimination. *Id.* at § 12112(b)(5)(A). To prove a prima facie case of discrimination under the ADA, a plaintiff has the burden of showing three elements: "(1) he suffers from a disability as defined by the ADA; (2) he is otherwise qualified, that is, with or without reasonable accommodations, he is able to perform the essential functions of the job; and (3) his employer discriminated against him because of his disability." *See Soi-*

*leau*, 928 F.Supp. at 46; *Lessard v. Osram Sylvania, Inc.*, 175 F.3d 193, 197 (1st Cir. 1999).

In order to meet the first element, that he had a "disability" within the meaning of the ADA, a plaintiff has the burden of showing that he

(A) has a physical or mental impairment that substantially limits one or more of his major life activities;

(B) has a record of such an impairment; or

(C) is regarded as having such an impairment.

*See* 42 U.S.C. § 12102(2).

Lyons claims he was disabled under all three prongs. (Compl.¶ 30.) If Lyons is unable to establish a prima facie case under one of these three prongs of § 12102(2), he is not protected by the ADA, nor by the Rehabilitation Act nor the MHRA. Each prong will be discussed separately.

**(A) Was There an Impairment that Substantially Limits One or More Major Life Activities?**

The determination of whether an impairment substantially limits one or more of an individual's major life activities is guided by a three-step analysis considering: (1) whether the problem constitutes a physical impairment; (2) whether the life activities upon which plaintiff relies constitute major life activities under the ADA; and (3) whether the impairment substantially limited one or more of the major life activities. *Santiago Clemente v. Executive Airlines, Inc.*, 213 F.3d 25, 30 (1st Cir.2000)(citing *Bragdon v. Abbott*, 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998)). Reading the record most favorably to Lyons, I find he satisfies the first two steps of this analysis. His shortened leg and his left ankle's osteoarthritis

are "impairments." *See* 29 C.F.R. § 1630.2(h)(1). Here, "walking" is the claimed major life activity that is substantially limited. Walking has been recognized as a major life activity. *See PGA Tour, Inc. v. Martin*, 532 U.S. 661, 668, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001); *Gillen v. Fallon Ambulance Service, Inc.*, 283 F.3d 11, 21 (1st Cir.2002)(acknowledging EEOC regulation 29 C.F.R. § 1630.2(i) incorporates walking as a major life activity).

The third step requires a showing that the impairment "substantially limited" the performance of the claimed major life activity. Not all physical impairments rise to the level of disability under the ADA. *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 565–66, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999). LPC asserts that Lyons cannot show that he had a disability that substantially limited the major life activity of walking. In response, Lyons states that the facts show that he was a qualified individual with a disability because his claimed impairment is an "obvious disability." Lyons provided the following evidence regarding his limitation on "walking." "I am limited in the distance and time that I can walk on concrete floors...I have an obvious limp when I walk. I also have nightly leg and ankle pain and am always in pain." (Lyons' Aff. ¶¶ 4, 10).

In determining whether an individual is "substantially limited" in a major life activity, three factors are considered: the "nature and severity of the impairment; ...[t]he duration or expected duration of the impairment; and ...[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *See* 29 C.F.R. § 1630.2(j)(2). In regard to duration, Lyons' impairment has existed for many years. That his leg has been permanently

shortened is undisputed. LPC asserts, however, that this impairment is best characterized as a minor one that has a minimal impact on the major life activity of walking. Lyons, in his deposition testimony, essentially agreed with that characterization.

The EEOC's regulations state that the individual's significant restriction must be "compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(2). Lyons' shortened leg must be evaluated taking into consideration his level of functioning with the assistance of his corrective heel lift device. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482–83, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) ("A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity."). Lyons must proffer evidence demonstrating the extent of the limitation on the major life activity of walking. *See Albertson's Inc.*, 527 U.S. at 567, 119 S.Ct. 2162. His burden is a modest one, but there must be some evidence from which a factfinder could draw the reasonable inference that his ability to walk is materially or substantially limited. *Snow v. Ridgeview Medical Center*, 128 F.3d 1201, 1207 (8th Cir.1997).

Many individuals in Maine find it difficult to walk, let alone run, up and down Mount Katahdin. Lyons must produce evidence that his inability to walk long distances was worse than the general populations' inability to walk long distances. *See EEOC v. Sara Lee Corp.*, 237 F.3d 349, 352 (4th Cir.2001) (citing *Pack v. Kmart Corp.*, 166 F.3d 1300, 1306 (10th Cir.1999)); *Colwell v. Suffolk Co. Police Dept.*, 158 F.3d 635 (2nd Cir.1998)(stating that the plaintiff must show his affliction is worse than that

suffered by a large portion of the population). Thus, it is imperative that Lyons do more than merely assert he had difficulty walking. The evaluation as to whether a major life activity has been substantially limited must be an "individualized inquiry" that deals specifically with the plaintiff's own personal circumstances. *Sutton*, 527 U.S. at 483, 119 S.Ct. 2139. Here, Lyons establishes that he suffered from an impairment that affects his ability to walk, but he does so only in general terms such as stating that he has a slight limp, he cannot run up and down a mile high mountain, he cannot walk long distances, and concrete floors bother him. *Cf. Colwell*, 158 F.3d at 644 (stating that plaintiff's "descriptions of his limitations are marked throughout by hedging and a studied vagueness, so that there is no support for the idea that his impairments would be significantly limiting to 'the average person in the general population.'") Lyons has not provided evidence to support a reasonable conclusion that he was significantly restricted in his ability to walk. I am cognizant of the "unenviable 'catch–22'" that could be created by requiring a disabled person to "expound on the many scenarios in which she is unable to walk." *Gillen*, 283 F.3d at 22. However in this case the evidence demonstrates that Lyons did a lot of walking on his job at the plant during the eighteen years he worked there and furthermore the evidence does not support any inference that his daily nonwork activities were limited in any way because of his difficulties in walking. He must generate some evidence of how this self described slight medical problem substantially limited his ability to walk.

**(B) Was There a Record of an Impairment that Substantially Limits One or More Major Life Activities?**

The complaint alleges that Lyons had a "record of impairment" that

substantially limited one or more major life activities. (Comp.¶ 30.) In order to prevail on a claim that one has a record of a physical or mental impairment that substantially limits one or more major life activities, a plaintiff must have a history of, or been misclassified as having, an impairment that substantially limits a major life activity. *See* 29 C.F.R. § 1630.2(k). The linchpin of a "record of impairment" claim is that the recorded impairment must be one that substantially limited a major life activity. *Santiago Clemente,* 213 F.3d at 33 (citing 29 C.F.R. § 1630.2(k)); *Sorensen v. University of Utah Hospital,* 194 F.3d 1084, 1087 (10th Cir.1999); *Hilburn v. Murata Elect. North Am., Inc.,* 181 F.3d 1220, 1229 (11th Cir.1999). As discussed above, Lyons has not established any genuine issues of material fact in dispute on this point. Neither party discusses this prong separately, although Lyons alludes to the employment applications and knowledge of his supervisors relating to the shortened leg. The record establishes that the impairment was duly noted and basically ignored throughout the eighteen years of Lyons' employment. While his "impairment" was a matter of record with his employer, Lyons fails to demonstrate how the record supports his claim of significant limitation. Thus, he fails to show he had a "disability" under prong (B) of § 12102(2).

**(C) Was He Regarded As Having an Impairment that Substantially Limits One or More Major Life Activities?**

■ The final prong under which Lyons may show he had a "disability," prong (C) of § 12102(2), states that an individual who is "regarded as" having an impairment that substantially limits a major life activity is nevertheless "disabled" within the meaning of the ADA. *See* 42 U.S.C. § 12102(2)(C). Under the EEOC regulations, an individual is regarded as having such an impairment if he

(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) Has [no physical or mental impairment within the meaning of the regulations] but is treated by a covered entity as having a substantially limiting impairment.

*Santiago Clemente,* 213 F.3d at 33 (citing 29 C.F.R. § 1630.2(1)).

Lyons asserts LPC regarded him as having an impairment that substantially limited a major life activity. (Compl.¶ 30.) Lyons asserts that numerous factors show, or a genuine issue of material fact exists, that at the time of his termination, LPC perceived him as substantially limited in a major life activity. He suggests that his supervisors knew of his slight limp, knew that at some point he asked for a rubber mat at the electrician's shop work station, knew that he had trouble walking great distances on concrete floors, and knew that his ankle caused him some pain.

■ These facts merely show that LPC was aware that Lyons was injured years ago, had some problem with pain symptoms, and had complained about the concrete floors. That the employer is aware of an employee's condition, even a serious condition, does not lead to an inference that the employer regarded the employee as unable to perform a major life activity. *See Heffernan v. Provident Life & Accident Ins. Co.,* 45 F.Supp.2d 1147, 1154 (D.Kan.1999) (rejecting the argument that a reasonable inference can be made that because the employer knew of the employee's heart condition, it regarded the

employee as unable to perform jobs involving stress or strenuous physical activity). "As with real impairments, ... a perceived impairment must be substantially limiting and significant." *Thompson v. Holy Family Hosp.*, 121 F.3d 537, 541 (9th Cir.1997) (citing *Gordon v. E.L. Hamm & Associates, Inc.*, 100 F.3d 907, 913 (11th Cir. 1996)). As discussed in (A) above these conditions do not amount to a substantial limitation on the major life activity of walking.

There is no evidence in the record indicating LPC treated Lyons as though he was unable to perform the duties of an electrician because of his shortened leg. His "perceived as" claim fails just as his other assertions fail. Based on the foregoing analysis, Lyons has not established that he had a "disability" as the term is defined under the ADA. Thus, he is not protected by the coverage of the ADA nor by the other two statutes that are the subject of this motion.

As I said earlier, to prove a prima facie case of discrimination under any of these statutes, a plaintiff has the burden of showing three elements: "(1) he suffers from a disability as defined by the statute; (2) he is otherwise qualified, that is, with or without reasonable accommodations, he is able to perform the essential functions of the job; and (3) his employer discriminated against him because of his disability." *See Soileau*, 928 F.Supp. at 45. Because Lyons has failed to establish element one, I do not need to discuss the other two aspects of his case. However, it is worth noting that there does not appear to be any evidence in the record that would support an inference that Lyons was terminated because of his shortened leg. There are not even any "stray comments" here to support the allegation of discrimination. Lyons may have been terminated by LPC without just cause, but that does not make

this matter into a case of discrimination based upon a disability.

Based upon the foregoing, LPC's motion for summary judgment on Counts I and III is **GRANTED**.

*So Ordered.*