**Elesma Oliveras SIFRE,**
**et al., Plaintiffs,**

v.

**DEPARTMENT OF HEALTH,**
**et. al., Defendants.**

**Civil No. 98–1904(JP).**

United States District Court,
D. Puerto Rico.

March 31, 1999.

Ricardo L. Torres Muñoz, San Juan, PR, for plaintiffs.

Lynn M. Doble Salicrup, José R. Cintrón Rodríguez, San Juan, PR, for defendants.

## OPINION AND ORDER

PIERAS, District Judge.

### I. Introduction and Background

The Court has before it Defendants' Motion to Dismiss Under Fed.R .Civ.P. 12(B)(6) (**docket No. 17**), Plaintiffs' Opposition to Defendants' Motion to Dismiss (**docket No. 22**), Defendants' Supplement to Motion to Dismiss (**docket No. 24**), and Plaintiffs' Opposition to Defendants' Supplement to Motion to Dismiss (**docket No. 32**). In addition, the Court will also examine Plaintiffs' Leave to File Amendment to the Complaint under FRCP 15 (**docket No. 25**), Defendants' Opposition to "Leave to File Amendment to the Complaint Under FRCP 15" and Motion to Strike the First Amended Complaint (**docket No. 26**), and Motion to Dismiss the First Amended Complaint (**docket No. 27**).

Plaintiffs filed their Complaint on August 10, 1998, bringing claims under the Americans With Disabilities Act ("ADA"), Titles I, II, and V, 42 U.S.C. §§ 12112, 12182, and 12203; § 504 of the Rehabilitation Act, 29 U.S.C. 794; and articles 1802 and 1803 of the Puerto Rico Civil Code, P.R.Laws Ann. tit. 31., §§ 5141, 5142. Plaintiffs are Elesma Oliveras Sifre ("Oliveras"), Ombudsman of the Puerto Rico Department of Health for HIV/AIDS, Carlos Aponte Ortiz ("Aponte"), Strategies and Liaison Coordinator for the Ombudsman's Office for HIV/AIDS patients, and Rubén Román Cruz ("Román"), Investigation Analyst at the Ombudsman's Office for HIV/AIDS. Plaintiffs all allege that they were discriminated against by their individual supervisors, the Secretary of the Department of Health, Carmen Feliciano de Melecio, the Executive Director of the AIDS Sexually Transmitted Diseases Program of the Department of Health, Ingrid Fernández Milián, the Auxiliary Secretary of Health Promotion and Protection of the Department of Health, Sylvette Soto Colón, and the Puerto Rico Department of Health in violation of the ADA and Rehabilitation Act as a result of their opposition to various regulations and other actions related to persons with HIV/AIDS.

## II. DISCUSSION

### A. Plaintiffs' Motion to Amend their Complaint to add § 1983 Violations

Before addressing Defendants' Motion to Dismiss, the Court must determine whether it will permit Plaintiffs' request for leave to amend their Complaint to add claims for a violation of Plaintiffs' First Amendment Rights under 42 U.S.C. § 1983. At the Initial Scheduling Conference, held on January 22, 1999, Plaintiffs informed the Court that they wished to amend their Complaint to add additional causes of action under § 1983. In a follow-up Order, the Court ordered Plaintiffs to file for leave to amend the Complaint on or before February 5, 1999 (docket No. 23). On February 8, 1999 Plaintiffs filed a Motion for Leave to File Amendment to the Complaint Under FRCP 15, arguing that their request to amend the Complaint is made in good faith, without any dilatory motives or undue delay, and relates to the same conduct described in the original Complaint. Thus, Plaintiffs argue that based on First Circuit law and Rule 15 of the Federal Rules of Civil Procedure, the Court should permit the amendment.

Defendants oppose Plaintiffs' motion on several grounds. First, they point out that Plaintiffs filed their motion late—three days after the Court's deadline. Further, Defendants assert that Plaintiffs violated the Court's ISC Call by not providing Defendants with a copy of their Initial Scheduling Conference Memorandum until one day prior to the ISC. Defendants consider Plaintiffs to have engaged in a "pattern of tardiness, incompliance [sic] and negli-

gence in the execution of their duties towards defendants and the Court" (Defs.' Opp'n. to Leave to File Amendment to the Compl. Under FRCP 15 and Motion to Strike the First Amended Compl. at 3), which they believe the Court should consider when ruling on their motion to amend the Complaint. Defendants further point out that Plaintiffs have improperly tried to assert amendments of the Complaint into their ISC Memorandum and Opposition to Defendants' initial Motion to Dismiss. In their final argument, Defendants claim that the Court should deny the proposed amendment because the newly added claims under § 1983 are time-barred, and thus, the amendment would be futile.

■■■ Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a Complaint "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Although Courts have discretion to permit an amendment, Rule 15(a)'s mandate that leave is to be freely given "is to be heeded." *Foman v. Davis*, 371 U.S. 178; 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The First Circuit, however, has stated that the " 'liberal amendment policy prescribed by Rule 15(a) does not mean that leave will be granted in all cases.' " *Acosta–Mestre v. Hilton Int'l of Puerto Rico*, 156 F.3d 49, 51 (1st Cir.1998) (quoting 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487, at 611 (2d ed.1990)). Acceptable reasons for denying a plaintiff leave to amend include:

> undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.

*Foman*, 371 U.S. at 182, 83 S.Ct. 227. Based on this standard, a court can refuse to grant leave to amend a complaint if the claim to be added is without legal merit.

*See Liberty Leather Corp. v. Callum*, 653 F.2d 694, 700 (1st Cir.1981).

■■ While Plaintiffs filed certain motions after court deadlines, these minor delays cannot constitute undue delay and are not a sufficient reason to deny leave to amend the Complaint. Further, only six months have passed since the original Complaint was filed on August 10, 1998, and the parties have not yet begun to engage in discovery; therefore, Defendants' argument that they would be prejudiced by Plaintiffs' addition of the § 1983 claims is without merit. *See Acosta–Mestre*, 156 F.3d at 51 (affirming district court decision to deny second amendment to complaint, requested fifteen months after initial complaint had been filed over a year after the first amendment, because defendants would be prejudiced by amendment).

■■ The Court, however, agrees with Defendants' argument that the amendment should not be permitted because the statute of limitations governing § 1983 actions has run. Section 1983 does not provide its own statute of limitations; when a federal statute does not include a limitations period, courts look to the most analogous state statute of limitations for guidance. *See Carreras–Rosa v. Alves–Cruz*, 127 F.3d 172, 174 (1st Cir.1997) (citing *Wilson v. Garcia*, 471 U.S. 261, 278–80, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)). The First Circuit has held that for § 1983 claims, the statute of limitations governing personal injury actions is to be applied. *See id.* In Puerto Rico, the relevant limitations period is one year, based on Article 1868(2) of the Puerto Rico Civil Code, P.R.Laws Ann. tit. 31 § 5298(2). *See id.* The accrual date of a § 1983 action, however, is determined by federal law. *See id.; Torres v. Superintendent of the Police of Puerto Rico*, 893 F.2d 404, 407 (1st Cir.1990). The accrual period "begins when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Torres*, 893 F.2d at 407 (citing *Marrapese v. Rhode Island*, 749 F.2d 934, 936 (1st Cir.1984)).

In the instant case, Plaintiffs' Complaint states that they were dismissed or transferred from their positions on June 30, 1997. This is the latest date their claims could have accrued.[1] Thus, to file a timely claim pursuant to § 1983, Plaintiffs must have filed their Complaint by July 1, 1998. Plaintiffs, however, did not file their Complaint until August 10, 1998. In addition, Plaintiffs make no specific claim that their § 1983 claims should be tolled, and the Court finds that no tolling occurred.

■ Tolling of a statute of limitations under § 1983 is governed by state law, and in Puerto Rico, "extrajudicial" claims and prior judicial claims serve to toll the limitations period. *See Torres*, 893 F.2d at 407 (citing article 1873 of the Puerto Rico Civil Code, P.R.Laws Ann. tit. 31 § 5303). In the instant case, the only possible extrajudicial claims that could toll the limitations period are the charges filed by Plaintiffs with the Equal Employment Opportunity Commission ("EEOC") within 180 days of their termination. The claims asserted in the charges, however, relate solely to Plaintiffs' causes of action under the ADA and Rehabilitation Act. In order for an extrajudicial claim to toll the statute of limitations for a later claim, the second cause of action must be identical to the first and require the same relief or conduct. *See Benítez–Pons v. Commonwealth of Puerto Rico*, 136 F.3d 54, 59 (1st Cir. 1998); *Rodríguez–Narváez v. Nazario*, 895 F.2d 38, 44 (1st Cir.1990).

■ The Puerto Rico Supreme Court has held that the filing of a charge with the EEOC for causes of action under Title VII tolls equivalent causes of action for discrimination under Puerto Rico law. *See Matos Molero v. Roche Products, Inc.*, 93 CDT 005, 1993 WL 839826 at *6–7 (P.R. Jan.14, 1993). As discussed by the Court in *León–Nogueras v. University of Puerto Rico*, "this result is perfectly consistent with the requirement that the substantive claims raised in the extrajudicial claim must be identical substantive claims raised in the subsequent judicial complaint." *León–Nogueras v. University of Puerto Rico*, 964 F.Supp. 585, 589 (D.Puerto Rico 1997). Since Plaintiffs' § 1983 actions for First Amendment violations are not identical to ADA or Rehabilitation Act claims nor require the same relief, they cannot be tolled by the filing of their EEOC charge.

■ In addition, the EEOC has no jurisdiction over claims brought pursuant to § 1983, and thus, a charge filed with the EEOC or Puerto Rico Anti–Discrimination Unit cannot serve to toll the limitations period for a § 1983 claim. *See León–Nogueras*, 964 F.Supp. at 589. In its analysis of Puerto Rico tolling law, the *León–Nogueras* Court noted that:

> "the Supreme Court of the Commonwealth of Puerto Rico has held that the filing of an administrative charge will not toll the running of the statute of limitations for a tort action, even if the tort arises from the same event which gave rise to the administrative complaint, because the administrative agency had no jurisdiction over tort claims."

964 F.Supp. at 588 (citing *Cintrón v. E.L.A.*, 127 D.P.R. at 592). Based on the Puerto Rico Supreme Court's analysis in *Cintrón*, the fact that the EEOC has no jurisdiction over § 1983 claims also leads to the conclusion that an EEOC charge cannot serve to toll the limitations period for the § 1983 claims.

The Court finds that Plaintiffs' filing of charges with the EEOC cannot serve to toll the limitations period of their § 1983 claims, and therefore, the § 1983 claims are time-barred. The Court further finds that it would be futile to allow Plaintiffs to amend their Complaint to add time-barred causes of action under § 1983. *See Execu-*

---

1. Even though Plaintiffs may have known or had reason to know of the basis for their § 1983 action prior to June 30, 1997, Defendants do not make such an argument, and thus, the Court will assume that the proper accrual date for the purposes of calculating the limitations period is the date they were relieved of their positions.

*tive Leasing Corp. v. Banco Popular de Puerto Rico,* 48 F.3d 66, 71 (1st Cir.1995) ("Tendered complaint would have been futile in any event because it could not have blocked summary judgment . . ."). Thus, Plaintiffs' Motion for Leave to File Amendment to the Complaint Under FRCP 15 is hereby **DENIED**.

## B. Standard for Motion to Dismiss and Plaintiffs' Allegations

Defendants' Motion to Dismiss Plaintiffs' Complaint is based on several grounds: (1) Plaintiffs' right to sue letters do not comply with 29 C.F.R. § 1601.28(d); (2) Plaintiffs' claims under Title II of the ADA, Rehabilitation Act and Puerto Rico tort law are time-barred; (3) Plaintiffs failed to establish their prima facie case under the Titles I and V ADA and the Rehabilitation Act; (4) the individual Defendants cannot be held personally liable under either the ADA or Rehabilitation Act; and (5) Plaintiffs are not entitled to punitive damages, compensatory damages, or a jury trial under the ADA or Rehabilitation Act.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may, in response to an initial pleading, file a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. It is well-settled, however, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) *see also Miranda v. Ponce Fed. Bank,* 948 F.2d 41 (1st Cir. 1991). The Court must accept as true "all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor." *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996) (citations omitted).

Although there is a low threshold for stating a claim, the pleading requirement is "not entirely a toothless tiger." *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 190 (1st Cir.1996) (quoting *The Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989)). Thus, a Complaint must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988). The Court, however, need not accept a complaint's " 'bald assertions' or legal conclusions" when assessing a motion to dismiss. *Abbott v. U.S.,* 144 F.3d 1, 2 (1st Cir.1998) (citing *Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1216 (1st Cir.1996)).

Plaintiffs' Complaint alleges the following, which the Court takes as true and in the light most favorable to Plaintiffs. The Ombudsman Office for HIV/AIDS was created at the Puerto Rico Department of Health ("Department of Health") pursuant to an agreement between the U.S. Department of Health and Human Services, Office of Civil Rights, Region II ("OCR"), and the Department of Health. Plaintiff Oliveras was appointed as Ombudsman for HIV/AIDS in May 1993, and during her time as Ombudsman, she was active in advocating for the rights of HIV/AIDS patients. Oliveras' professional history has been highly recognized by patients and community organizations, and she was qualified for her position.

Oliveras alleges that she:

has been the object of persecution, discrimination, retaliation and harassment as a result of performing her duties as Ombudsman for HIV/AIDS patients, and guarantee [sic], defend, and advocate for the rights of the clientele, even if they were discriminated against by DOH in open violation of section 2(d) of the agreement signed between the DOH and OCR. . . .

by the Department of Health and her individual supervisors. (Compl.¶ 21). The specific acts of advocacy that she claims were the cause of this discrimination and retaliation include: the report prepared on the management of medical records of pa-

tients with HIV/AIDS in the Fajardo region; opposition to Regulation 86 regarding the transfer, disposal, exhumation, and cremation of corpses of persons infected with HIV/AIDS; opposition to Regulation 87 regarding transmissible diseases and the disposition of patients infected with HIV/AIDS; position regarding the harmful effects that scheduling changes, resulting from "Health Reform" could have on "PASET"personnel, including the Regional Immunological Clinics, on the clinical handling of HIV/AIDS patients. (Compl.¶ 19).[2]

The Complaint also asserts that on or around May 1997, OCR requested information from Oliveras regarding the agreement signed between the Department of Health and OCR regarding Regulation 87. Oliveras asserts that she delivered the requested information to OCR and was retaliated against by Defendants. Oliveras claims that she was dismissed from her position for the above-mentioned reasons effective June 30, 1997.

Plaintiff Aponte was appointed Strategies and Liaison Coordinator for the Ombudsman's office in May 1993, and was active in advocating the rights of HIV/AIDS patients' rights. Aponte alleges that he has been recognized by patients and community based organizations for his work and was qualified for his position. He alleges, like Oliveras, that he was removed from his position and transferred to another "dependency" of the Department of Health for his positions on HIV/AIDS related issues and advocacy for the rights of HIV/AIDS patients effective June 30, 1997.

Plaintiff Román was appointed as Investigation Analyst at the Ombudsman's Office for HIV/AIDS in August 1994 and has been active in defending the rights of HIV/AIDS patients. Román has been highly recognized by HIV/AIDS patients and community organizations and was qualified

for his position. Román is blind, and "as part of his employee/employer relationship with the DOH, was granted a reasonable accommodation," although he claims he was the victim of discrimination based on his blindness (Compl.¶¶ 34, 39). Román also claims, like Oliveras and Aponte, that he was dismissed from his position for his stance on various regulations relating to HIV/AIDS patients as well as for his advocacy on behalf of HIV/AIDS patients.

### C. Plaintiffs' Voluntary Dismissal of ADA Title I and Title II Claims

In Plaintiffs' response to Defendants' statute of limitations argument in their opposition motion, they voluntarily dismiss their claims under Title II of the ADA, and Plaintiffs Oliveras and Aponte request the dismissal of their claims under Title I of the ADA. Thus, pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure, Plaintiffs' ADA Title II claims are hereby **DISMISSED WITHOUT PREJUDICE**, and Plaintiffs Oliveras and Aponte's claims under ADA Title I are also hereby **DISMISSED WITHOUT PREJUDICE**.

### D. Plaintiffs' Claims under Title I of the ADA and the Rehabilitation Act

Defendants argue that Plaintiffs' claims under Title I of the ADA and the Rehabilitation Act should be dismissed because they have failed to plead sufficient facts to satisfy their prima facie case. Plaintiffs do not specifically dispute this claim, but rather, reiterate the claims made in their Complaint and suggest that the Court should deny Defendants' motion because their allegations should be considered in the light most favorable to them.

Title I of the ADA provides that:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such

---

**2.** All three Plaintiffs make identical allegations regarding the retaliation and discrimination they experienced, and the Court refers to these specific claims in its discussion of Plaintiffs Aponte and Román's allegations.

individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment. 42 U.S.C. § 12112(a). The First Circuit has held that in order to establish a claim under this provision of the ADA, a plaintiff must show:

(1) that he or she suffers from a disability within the meaning of the Act; (2) that he or she was able to perform the essential functions of the job, either with or without reasonable accommodation; and (3) that the employer discharged him or her in whole or in part because of that disability.

*Feliciano v. State of Rhode Island*, 160 F.3d 780, 784 (1st Cir .1998) (citing *Katz v. City Metal Co., Inc.*, 87 F.3d 26, 30 (1st Cir.1996)).

█ The definitions of "disability" under the ADA and Rehabilitation Act are identical. *See Tardie v. Rehabilitation Hospital of Rhode Island*, 168 F.3d 538, 542–43 (1st Cir.1999) (comparing the statutory and regulatory definitions of "disability" under the ADA and the Rehabilitation Act). Therefore, claims under both statutes are treated "substantially identically," and a plaintiff seeking relief under the ADA and Rehabilitation Act must satisfy the requirements of the prima facie case enumerated above to avoid dismissal of their claims. *Katz*, 87 F.3d at 31 n. 4; *see also Bartlett v. New York State Board of Law*, 156 F.3d 321, 327 (2d Cir.1998); *Woodman v. Runyon*, 132 F.3d 1330, 1338 (10th Cir.1997) (citations omitted); *Pritchard v. Southern Company Services*, 92 F.3d 1130, 1134 (11th Cir.1996); *Figueroa v. Fajardo*, 1 F.Supp.2d 117, 122 (D.Puerto Rico 1998).

█ Neither Oliveras nor Aponte allege in their Complaint that they are disabled under the ADA or Rehabilitation Act. Rather, their cause of action is based on their behaviors in "guarantee[ing], defend[ing], and advocat[ing] for the rights of [HIV/AIDS patients]." (Compl.¶¶ 21, 26). To sustain a Title I ADA or Rehabilitation Act claim, a plaintiff must meet the "threshold burden of establishing that he [or she] is 'disabled' within the meaning of the statutes." *Roth v. Lutheran General Hosp.*, 57 F.3d 1446, 1455 (7th Cir.1995) (citations omitted). Since Plaintiffs Oliveras and Aponte have not alleged that they are disabled within the meaning of the ADA or Rehabilitation Act, they have failed to satisfy the first prong of their prima facie case. *See Feliciano*, 160 F.3d at 784; *see also Hartog v. Wasatch Academy*, 129 F.3d 1076, 1082 (10th Cir.1997) (Section 12112(a) of the ADA did not apply to the plaintiff because he did not suffer from any disability).

Plaintiff Román, however, is blind, which is a disability covered by the ADA. *See* 29 C.F.R. § 1630.2(i). Although Román states that he "was granted a reasonable accommodation" by the Department of Health, (Compl.¶ 34), he also alleges that he was discriminated against "because of his condition as a blind individual." (Compl.¶ 39). Since the Court must look at his Complaint with all reasonable inferences in his favor, Román's claim under Title I cannot be dismissed for failing to state a claim under Rule 12(b)(6). Román alleges that he was qualified for his position, that he is blind, and that he lost his position because of his blindness, which is sufficient to satisfy his prima facie case of disability discrimination at this stage.

█ The Court, however, notes that Plaintiffs claims may also be covered under another provision of Title I of the ADA. Section 12112(b)(4) of the ADA defines "discriminate" as "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4) ("ADA association provision"). Neither party has discussed whether or not Plaintiffs fall within the ADA association provision; however, the

Court must explore this issue before dismissing Plaintiffs' claims.[3]

As discussed in the EEOC Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. Pt. 1630.8, App., the association provision "is intended to protect any qualified individual, whether or not that individual has a disability, from discrimination because that person is known to have an association or relationship with an individual who has a known disability." The relationship need not be a familial relationship, but can extend to business, social or other relationships or associations. 29 C.F.R. § 1630.8. The guidelines further describe situations which illustrate the scope of the provision, such as when a person without a disability is not hired for a job after disclosing that his or her spouse has a disability, and the employer bases its decision on the belief that the applicant would miss work or leave early to care for the spouse. 29 C.F.R. Pt. 1630.8, App. Another example described in the guidelines is an employer who discharges a person volunteering with AIDS patients because the employer believes the employee would contract the disease. *Id.*

In a comprehensive opinion discussing the legislative history and scope of the ADA association provision, the Tenth Circuit determined what is necessary to state a prima facie case of association discrimination. *See Hartog*, 129 F.3d at 1085.[4] Based on case law decided under other ADA provisions, the *Hartog* Court held that a plaintiff must show that he or she:

(1) was qualified for the job at the time of the adverse employment action; (2) was subjected to adverse employment action; (3) was known by his employer at the time to have a relative or associate with a disability; and (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision. *Id.*

Plaintiffs have satisfied the first two prongs of their prima facie case of association discrimination by alleging that they were qualified for their positions and subjected to adverse employment action. The Court, however, finds that Plaintiffs have not articulated a claim that is covered by the association provision, and thus, cannot satisfy the fourth element of their prima facie case as described in *Hartog*. Plaintiffs were clearly involved with disabled people—people with HIV/AIDS—through their positions at the Department of Health. In construing their Complaint in the light most favorable to them, Plaintiffs are, thus, "associated" with people with disabilities. Plaintiffs, however, have not sufficiently alleged that they lost their positions because of their association with HIV/AIDS patients.

The ADA association provision is intended to apply to situations in which an employer takes an adverse action against an employee based on a belief about the disability of the employee's associate. Courts construing the association discrimination provision have looked to the EEOC inter-

3. Although there is no equivalent provision in the Rehabilitation Act, 29 U.S.C. 794(d) states that "the standards used to determine whether [section 504 of the Rehabilitation Act] has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under Title I of the Americans with Disabilities Act of 1990." Thus, the Court will assume for the purposes of this opinion that the Rehabilitation Act also permits a claim for association discrimination and utilizes the same standards as the ADA. *See Walthall v. Fulton County Sch. Dist.*, 18 F.Supp.2d 1378, 1386 (N.D.Ga.1998) (utilizing ADA standards in Rehabilitation Act claim

of association discrimination based on § 794(d)).

4. The Tenth Circuit noted that "[t]he association provision has been the subject of very little litigation .... [i]t was apparently inspired in part by testimony before House and Senate Subcommittees pertaining to a woman who was fired from her long-held job because her employer found out that the woman's son, who had become ill with AIDS, had moved into her house so she could care for him." *Hartog*, 129 F.3d at 1082.

pretive guidelines described above in assessing whether a plaintiff's allegations of association discrimination state a claim under the statute. These courts have found that to state a claim of association discrimination, a plaintiff must show that his or her employer took adverse action because of stereotypes or unfounded beliefs regarding the associate's disability. *See Barker v. Int'l Paper Co.*, 993 F.Supp. 10, 15 (D.Maine 1998) ("Plaintiff has not alleged that Defendant held or acted upon any unfounded assumptions about Plaintiff on account of his wife's disability."); *Lester v. Compass Bank*, Civil No. 96–AR–0812–S, 1997 WL 151782 at *3 (N.D.Ala. Feb.10, 1997) ("The ADA association provision is aimed at preventing unfounded stereotypes and assumptions about employees who associate with disabled people"); *Braverman v. Penobscot Shoe Co.*, 859 F.Supp. 596, 604 (D.Maine 1994) (employee not covered by association provision because "the EEOC regulations suggest that § 12112(b)(4) was intended to apply, for example to an employer's failure to hire an applicant because the applicant has a disabled spouse, or an employer's discharge of an employee who volunteered at an AIDS clinic due to the employer's fear of contracting AIDS.").

In this case, assuming Plaintiffs' allegations are true, Plaintiffs do not claim they were dismissed because of their employer's beliefs regarding HIV/AIDS patients with whom Plaintiffs were associated. Rather, Plaintiffs claim they were dismissed because of their advocacy on behalf of HIV/AIDS patients as part of their jobs at the Department of Health. Thus, Plaintiffs claims are not covered by section 12112(b)(4), but rather should be analyzed under the retaliation provision of Title V of the ADA. *See Barker*, 993 F.Supp. at 15 (plaintiff who alleged he was terminated because of his advocacy on behalf of his wife and wife's subsequent filing of a discrimination charge does not fall within the ADA association discrimination provision but may fall under the ADA's prohibition against retaliation or coercion.)

Therefore, for the reasons set forth above, the Court hereby **DISMISSES WITH PREJUDICE** Plaintiffs Oliveras and Aponte's claims under the Rehabilitation Act and Román's Title I claims for association discrimination.

### E. Plaintiffs' Title V Claims for Retaliation

Defendants argue that Plaintiffs cannot satisfy their prima facie case for retaliation under 42 U.S.C. § 12203 and that their claims should be dismissed. Plaintiffs rebut this argument by asserting that they have satisfied their prima facie through the allegations in their Complaint, specifically that they were fired, in violation of the Title V of the ADA, for their advocacy on behalf of HIV/AIDS patients. Plaintiffs further argue that they have sufficiently alleged a causal connection between their actions and dismissal under the relevant case law. Defendants, however, assert that Plaintiffs' allegations are not "protected conduct" under the ADA, and thus, cannot be the basis of a retaliation claim. The Court agrees.

In general, the essence of a retaliation claim "is that the plaintiff engaged in conduct protected by the Constitution or by statute, the defendant took an adverse action against the plaintiff, and this adverse action was taken (at least in part) because of the protected conduct." *Thaddeus–X v. Blatter*, 175 F.3d 378, ——, 1999 WL 114379 at *5 (6th Cir.1999). The anti-retaliation provision of the ADA states:

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42. U.S.C. § 12203.

The First Circuit, in analogizing Title V of the ADA to the Title VII context, has

required a plaintiff bringing a claim of retaliation to show: (1) that he or she was engaged in protected conduct; (2) that he or she was discharged, and; (3) that there was a causal connection between the discharge and the conduct. *See Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir.1997) (citing *Wyatt v. City of Boston*, 35 F.3d 13, 15 (1st Cir.1994) (per curiam)). A plaintiff need not have succeeded on his or her claim of disability to assert a claim for retaliation. *Soileau*, 105 F.3d at 16 (citing *Mesnick v. General Elec., Co.*, 950 F.2d 816, 827 (1st Cir. 1991)).

Protected conduct in the statutory context "is, clearly, that conduct which the statute defines as protected . . ." *Thaddeus-X*, —— F.3d at ——, 1999 WL 114379 at *5. The ADA prohibits discrimination based on disability in employment,[5] by public entities in relation to benefits, services, programs, or activities,[6] and in public accommodations.[7] Protected conduct under the ADA that has been found to be sufficient to state a claim for retaliation includes: requesting accommodation for a disabled person, *see Barker*, 993 F.Supp. at 16; an informal complaint to management, *see DeJoy v. Comcast Cable Communications, Inc.*, 968 F.Supp. 963, 988 (D.N.J.1997); and the filing of an EEOC charge, *see Williams v. Chicago Board of Ed.*, No. 97 C 1063, 1997 WL 467289 at *3 (N.D.Ill.1997).

The Court finds that Plaintiffs have failed to plead facts that show they were engaged in "protected conduct" under the ADA. The conduct described by Plaintiffs involve policy positions they took regarding HIV/AIDS related regulations and reports they made during their time at the Department of Health. Specifically, they allege that they prepared a report on the management of medical records of patients with HIV/AIDS, opposed Regulation 86 regarding the corpses of persons inflicted with HIV/AIDS, opposed Regulation 87 regarding transmissible diseases and the dispositions of patients infected with HIV/AIDS, and took a position regarding the harmful effects of scheduling changes could have on "PASET personnel." (Compl.¶¶ 19, 26, 32). These behaviors are not "protected conduct" under the ADA, and the Court finds that as stated in the Complaint, the actions described by Plaintiffs do not relate to any forms of discrimination prohibited by Titles I, II, or III of the ADA.

Even though a court must resolve any doubts in favor of a plaintiff on a motion to dismiss and not grant such a motion unless it is clear that Plaintiffs can prove no set of facts in support of their claim, *Miranda v. Ponce Fed. Bank*, 948 F.2d 41 (1st Cir. 1991), a plaintiff still must provide "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988). Plaintiffs' vague and conclusory allegations regarding their work with the Department of Health do not indicate any actions which are "protected conduct" prohibited by the ADA. It is not apparent to the Court how the management of medical records of

---

**5.** "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112.

**6.** "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

**7.** "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182.

HIV/AIDS patients, treatment of corpses of HIV/AIDS inflicted persons, disposition of patients infected with HIV/AIDS, and the scheduling of "PASET personnel"[8] is related to the conduct prohibited by the ADA regarding employment, public benefits, or public accommodations. Without more specific allegations as to how the positions Plaintiffs took as part of their work at the Department of Health opposed conduct made illegal by the ADA, the Court cannot permit their claim to go forward.

The Court finds that by not alleging sufficient facts to show that they have engaged in "protected conduct" under the ADA, Plaintiffs have not satisfied the first element of their prima facie case for retaliation. See Soileau, 105 F.3d at 16; see also Lester, 1997 WL 839010 at *2 (plaintiff did not meet the first element of his prima facie case because did not demonstrate that he engaged in statutorily protected conduct). Therefore, the Court hereby **DISMISSES** Plaintiffs' claims for retaliation under Title V of the ADA **WITH PREJUDICE.**

### F. Timeliness of Plaintiffs' Tort Law Claims

Defendants ask the Court to dismiss Plaintiffs' Puerto Rico tort law claims because they were not brought within the one-year limitations period prescribed by law. Plaintiffs assert that these claims should be equitably tolled because of their filing of an administrative charge with the EEOC. A court can grant a motion to dismiss arguing that a claim is barred by the statute of limitations if the "pleader's allegations leave no doubt that an asserted claim is time-barred." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507 (1st Cir.1998). Based on the allegations in Plaintiffs' Complaint, the Court finds that their tort law claims are time-barred.

As thoroughly discussed above in the context of Plaintiffs' motion to amend the complaint and add causes of action under § 1983, Puerto Rico law allows an extrajudicial claim to toll the statute of limitations for a later claim if the second cause of action is identical to the first and requires the same relief or conduct. See Benítez–Pons, 136 F.3d at 59 (1st Cir.1998); Rodríguez–Narváez, 895 F.2d at 44 (1st Cir.1990). When a plaintiff initially files a charge with the EEOC, identical causes of action later filed in court are tolled if they are also claims that initially fell within the jurisdiction of the administrative agency. See León–Nogueras, 964 F.Supp. at 589. Plaintiffs' tort claims are not identical to the claims made in Plaintiffs' EEOC charge, and further, the filing of an administrative charge will not toll the running of the statute of limitations for a tort action because the EEOC has no jurisdiction over Puerto Rico tort law claims. See id. (citing Cintrón v. E.L.A., 127 D.P.R. at 592). Thus, the Court hereby **DISMISSES** Plaintiffs' tort claims under sections 1802 and 1803 **WITH PREJUDICE.**

### G. Adequacy of Plaintiffs' Right–to–Sue Letter

The only remaining claims are Plaintiff Román's ADA Title I and Rehabilitation Act claims. Defendants argue that under section 1601.28(d) of Title 29 of the Code of Federal Regulations ("CFR"), Plaintiffs must present a right-to-sue letter issued by the Attorney General before they are able to sue the Department of Health or Dr. Feliciano in her official capacity under the ADA and Rehabilitation Act. Defendants assert that the proper remedy for a case filed without such a right-to-sue letter is dismissal without prejudice. Plaintiffs, however, point out that their letters were issued by the U.S. Department of Justice, and thus, claim they comply with the CFR provision at issue. Plaintiffs insist that

---

**8.** Plaintiffs never define "PASET personnel," and the Court has no idea what "PASET personnel" are, or their relevance to protected conduct under the ADA.

even if the Court requires the letters to be signed personally by the U.S. Attorney General, the Complaint should not be dismissed, but rather "equitably adjust[ed]." [9]

The section entitled "Notices of right-of-sue for charges against governmental respondents" states in part that:

In all cases where the respondent is a government, governmental agency, or a political subdivision, the Commission will issue the notice of right to sue when there has been a dismissal of a charge. The notice of right to sue will be issued in accordance with § 1601.28(e). In all other cases where the respondent is a government, governmental agency, or political subdivision, the Attorney General will issue the notice of right to sue....

29 C.F.R. § 1601.28(d). Courts interpreting this provision and the issuance of right-to-sue letters have held that the prerequisite of a right-to-sue letter in Title VII and ADA cases is not a jurisdictional requirement to suit in Federal Court, and thus, it is subject to "equitable adjustments." [10] *Marrero–Rivera v. Dept. of Justice*, 800 F.Supp. 1024, 1028 (D.Puerto Rico 1992) (*"Marrero–Rivera I"*) (citations omitted) ("Equitable considerations dictate that while plaintiff is required to request a right-to-sue letter, failure to do so should not damage the plaintiff's rights under the statute.") These equitable exceptions include waiver, estoppel, and equitable tolling. *See McKinnon v. Kwong Wah Restaurant*, 83 F.3d 498, 505 (1st Cir.1996) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)); *Townsend v. State of Oklahoma*, 760 F.Supp. 884, 887 (W.D.Ok. 1991).

In the specific case of suing a government or governmental agency, Courts have waived the requirement of a right-to-sue letter signed by the Attorney General when a plaintiff has diligently yet unsuccessfully attempted to obtain the letter. *See Townsend*, 760 F.Supp. at 887; *Solomon v. Hardison*, 746 F.2d 699, 702 (11th Cir .1984); *Fouche v. Jekyll Island–State Park Authority*, 713 F.2d 1518, 1526 (11th Cir.1983); *Hladki v. Jeffrey's Consol., Ltd.*, 652 F.Supp. 388, 393 (E.D.N.Y.1987). In this case, Plaintiffs do not argue that they attempted unsuccessfully to obtain a right-to-sue letter signed by the Attorney General, but rather, argue that they received a letter from the Department of

9. The Court recognizes that it cannot consider material outside the pleadings on a Motion to Dismiss without converting the motion to a motion for summary judgment and giving the parties a reasonable opportunity to present all relevant material. Fed.R.Civ.P. 12(b)(6). The Court finds that although neither party addressed this issue in their motions, both Plaintiffs and Defendants submitted exhibits with their motions including the right-to-sue letters and EEOC charges, and neither party disputes the accuracy of this documentary evidence. Thus, the Court finds that the parties had a reasonable opportunity to present evidence in support of their position on the issue of the adequacy of Plaintiffs' right-to-sue letters and it will look at this evidence in its analysis. *See Maldonado v. Domínguez*, 137 F.3d 1, 5–6 (1st Cir.1998) (discussing exception to the rule that district court must inform parties of conversion from 12(b)(6) motion to summary judgment motion).

10. The Court notes that there is a split among the Circuits as to whether the Rehabilitation Act requires the exhaustion of administrative remedies prior to filing a claim in federal court. *See Downey v. Runyon*, 160 F.3d 139, 145 (2d Cir.1998) (holding that plaintiff obliged to exhaust administrative remedies prior to bringing claim under the Rehabilitation Act); *Holmes v. Texas A & M University*, 145 F.3d 681, 683–84 (5th Cir.1998) (exhaustion of administrative remedies not mandated by the Rehabilitation Act); *Cheeney v. Highland Community College*, 15 F.3d 79, 82 (7th Cir.1994) (same) *Smith v. Barton*, 914 F.2d 1330, 1338 (9th Cir.1990) (same). The majority of Courts, however, hold that a plaintiff need exhaust her administrative remedies under the Rehabilitation Act prior to proceeding with a judicial claim. Plaintiffs included Rehabilitation Act claims in their EEOC charge, and the Court finds that based on the requirement of administrative exhaustion and section 794(d) of the Rehabilitation Act, adopting the remedies and procedures of the ADA, the CFR provisions at issue regarding Attorney General authorization also apply to Plaintiffs' Rehabilitation Act claims.

Justice, which is sufficient. Further, Plaintiffs claim that they should be able to remedy this defect by now requesting and submitting the proper letter signed by the Attorney General, and that the Court should not dismiss the Complaint for this defect.

■ Because the receipt of a right-to-sue letter is a non-jurisdictional prerequisite to filing a claim in Federal Court, the lack of such a letter "may be cured by the plaintiff's receipt of the letter during the pendency of the suit." *Marrero–Rivera I,* 800 F.Supp. at 1028 (citing *Neal v. IAM Local Lodge 2386,* 722 F.2d 247 (5th Cir. 1984)); *Wrighten v. Metropolitan Hospitals, Inc.,* 726 F.2d 1346 (9th Cir.1984). Plaintiffs suggest that this statement by the *Marrero–Rivera I* Court permits them to file the proper letter at any time during the course of this litigation. The *Marrero–Rivera I* Court, however, stated "when faced with a motion to dismiss for failure to obtain such a letter, we look at the file for evidence that plaintiff has cured the defect [of the lack of a right-to-sue letter signed by the Attorney General] subsequent to the filing of the court action." *Marrero–Rivera I,* 800 F.Supp. at 1028; *see also Wrighten,* 726 F.2d at 1351 (noting that the district court correctly found that issuance of right-to-sue letters after filing of federal claim cured any jurisdictional defect, but stating that "[p]remature suits are always subject to a motion to dismiss and there was none here.")

■ The Court finds that although Plaintiff Román's letter is issued by the Department of Justice, it is not signed by the Attorney General or an Assistant Attorney General. *See Marrero Rivera v. Department of Justice,* 821 F.Supp. 65, (D.Puerto Rico 1993) (*"Marrero–Rivera II "*) (noting that letter issued by Assistant Attorney General and stating that plaintiff had the right to institute a Title VII action was sufficient). The right-to-sue letters issued by the Department of Justice are all signed by a person identified as a Civil Rights Analyst in the Employment Litiga-

tion Section. Thus, Román's letter does not conform with the requirements set out by section 1601.28 of the CFR. If Plaintiffs had initially received the letter from the Civil Rights Analyst and then later requested a letter from the Attorney General which was denied by the Attorney General or provided to the Court, the Court would be in a position to allow the case against the governmental Defendant to continue. Plaintiffs, however, have made no such showing, and thus, the Court hereby **DISMISSES** Plaintiff Román's Title I ADA and Rehabilitation claims against Defendants the Department of Health and Dr. Feliciano in her official capacity **WITHOUT PREJUDICE.**

### H. Individual Liability under Title I of the ADA and Rehabilitation Act

■ The only remaining claims are Plaintiff Román's claims against the individual defendants for violations of Title I of the ADA and the Rehabilitation Act. Defendants argue that there is no personal liability under the ADA or Rehabilitation Act, and thus, that the claims against Plaintiffs' individual supervisors in their personal capacities should be dismissed. Plaintiffs contend that the plain language of the ADA allows for individual liability, and further, that the policies behind ADA and other civil rights statutes should lead the Court to hold individuals liable for discrimination.

Neither the First Circuit nor the Supreme Court has decided the issue of whether a plaintiff suing under the civil rights statutes can maintain a suit against an individual in their personal capacity. *See Serapión v. Martínez,* 119 F.3d 982, 992–93 (1st Cir.1997) (citing *Scarfo v. Cabletron Sys., Inc.,* 54 F.3d 931, 951–52 (1st Cir.1995) (declining to address the issue of individual liability in Title VII context)). The issue, however, has created a split among other circuits, with the majority finding no individual liability under Title VII, the Age Discrimination in Employ-

ment Act (ADEA), and the ADA.[11] Some courts within the First Circuit have found individual liability under these statutes, *see Iacampo v. Hasbro Inc.*, 929 F.Supp. 562, 571–72 (D.R.I.1996) (Title VII and ADA); *Weeks v. State of Maine*, 871 F.Supp. 515, 516–17 (D.Maine 1994) (Title VII and ADEA); *Douglas v. Coca–Cola Bottling Co. of Northern New England, Inc.*, 855 F.Supp. 518–20 (D.N.H.1994) (Title VII), while others have rejected individual liability, *see Hernández v. Wangen*, 938 F.Supp. 1052, 1063–65 (D.Puerto Rico 1996) (Title VII); *Anonymous v. Legal Serv. Corp.*, 932 F.Supp. 49, 50–51 (D.Puerto Rico 1996) (ADA); *Miller v. CBC Companies, Inc.*, 908 F.Supp. 1054, 1065 (D.N.H.1995) (ADA).

This Court has previously addressed the question of individual liability in the context of a Title VII claim, holding that an individual defendant can be held personally liable under an "alter ego" theory. See *Santiago v. Lloyd*, 33 F.Supp.2d 99, 103–04 (D.Puerto Rico, 1998) (Pieras, J.). The Court held that when a supervisor is more than a mere supervisor, but rather, the equivalent of the employer, he can be held individually liable under Title VII. *Id.* In the case at hand, Plaintiffs do not make any specific allegations regarding their individual supervisors, and thus, the Court cannot apply the alter ego theory to hold the individual Defendants liable.

The Court finds that as Plaintiffs have presented "no arguments for allowing (their individual) claims . . . . to proceed," *Rivera Rodríguez v. Police Dept. of Puerto Rico*, 968 F.Supp. 783, 785 (D.Puerto Rico 1997) (Pieras, J.), it will not hold the individual defendants liable for discrimination under the ADA. In addition, several courts

have held that the Rehabilitation Act, like the ADA, does not permit individuals to be held personally liable. *See Montez v. Romer, et. al.*, 32 F.Supp.2d 1235, 1241 (D.Colo.1999); *Baublitz v. State of California*, No. C98–0434 CRB, 1998 WL 427444 at * 1 (N.D.Cal. July 27, 1998); *Huck v. Mega Nursing Services, Inc.*, 989 F.Supp. 1462, 1464 (S.D.Fl.1997). As in the context of Plaintiff's ADA claim, the Court has been presented with no persuasive reason to hold the individual Defendants liable under the Rehabilitation Act, and thus, GRANTS Defendants' Motion to dismiss the individual Defendants.

For the reasons set forth above, the Court hereby **DISMISSES WITH PREJUDICE** Plaintiff Román's ADA Title I and Rehabilitation Act claims against the individual Defendants in their personal capacities.

### III.  Conclusion

Since all of Plaintiffs' claims have been dismissed, the Court need not address the other bases of Defendants' Motion to Dismiss, namely whether the ADA and Rehabilitation Act claims are time-barred and Plaintiffs' right to a jury trial and compensatory or punitive damages under the ADA and Rehabilitation Act.

The Court hereby enters **JUDGMENT, DISMISSING** the following claims **WITHOUT PREJUDICE:** (1) Plaintiffs Elesma Oliveras Sifre and Carlos Aponte Ortiz's claims under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112; (2) Plaintiffs Oliveras, Aponte, and Ruben Román Cruz's claims under Title II of the ADA, 42 U.S.C. § 12182; (3) Plaintiff Román's ADA Title I claim, 42 U.S.C. § 12112, and Rehabilitation Act claim, 29 U.S.C. § 794, against the Depart-

---

**11.** The Second, Seventh, Ninth, Tenth, Eleventh, and District of Colombia Circuit have determined that supervisors may only be held individually liable in their official capacities. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313–17 (2d Cir.1995) (Title VII); *U.S. Equal Employment Opportunity Commission v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1282

(7th Cir.1995) (ADA); *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587–88 (9th Cir.1993) (Title VII and ADA); *Haynes v. Williams*, 88 F.3d 898, 900–01 (10th Cir.1996) (Title VII); *Smith v. Lomax*, 45 F.3d 402, 403–404 & n. 4 (11th Cir.1995) (Title VII & ADEA); *Gary v. Long*, 59 F.3d 1391, 1399 (D.C.Cir.1995) (Title VII).

ment of Health and Carmen Feliciano de Melecio in her official capacity. The following claims are **DISMISSED WITH PREJUDICE:** (1) Plaintiff Román's ADA Title I claim, 42 U.S.C. § 12112, and Rehabilitation Act claim, 29 U.S.C. § 794, against the individual Defendants Carmen Feliciano, Ingrid Fernández Milián, and Sylvette Soto Colón in their personal capacities; (2) Plaintiffs Oliveras and Aponte's Rehabilitation Act claims, 29 U.S.C. § 794; (3) Plaintiffs' claims under Title V of the ADA, 42 U.S.C. § 12203; (4) Plaintiffs' tort claims brought under articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31., §§ 5141, 5142.

IT IS SO ORDERED.