# United States Court of Appeals
## For the First Circuit

No. 99-1701

ELESMA OLIVERAS-SIFRE, CARLOS I. APONTE-ORTIZ, AND
RUBEN ROMAN-CRUZ,

Plaintiffs, Appellants,

v.

PUERTO RICO DEPARTMENT OF HEALTH, CARMEN FELICIANO-DE-MELECIO,
IN HER PERSONAL CAPACITY AND AS SECRETARY OF THE DEPARTMENT OF
HEALTH, INGRID FERNANDEZ-MILIAN, IN HER PERSONAL CAPACITY,
SYLVETTE SOTO-COLON, IN HER PERSONAL CAPACITY,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., <u>Senior U.S. District Judge</u>]

Before

Torruella, <u>Chief Judge</u>,
Coffin, <u>Senior Circuit Judge</u>,
and Selya, <u>Circuit Judge</u>.

<u>Ricardo L. Torres Munoz</u> for appellants.
<u>Lynn Doble-Salicrup</u>, Attorney, Federal Litigation Division,
with whom <u>Gustavo A. Gelpi</u>, Solicitor General, <u>Edda Serrano-
Blasini</u>, Deputy Solicitor General, were on brief for appellees.

May 26, 2000

**COFFIN, <u>Senior Circuit Judge</u>.**    Appellants are three individuals who were hired by the Puerto Rico Department of Health to perform advocacy work for persons with AIDS.  They claim that the Department's failure to renew their contracts at the end of their original terms stemmed from discrimination in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213, the Rehabilitation Act of 1973, 29 U.S.C. § 794, and provisions of Puerto Rico law.  Defendants are the Department of Health, the Secretary of that Department, and two other supervisory officials.

The district court granted defendants' motion to dismiss the complaint in its entirety, finding various deficiencies in the different counts.  <u>See</u> <u>Oliveras-Sifre</u> v. <u>Department of Health</u>, 38 F.Supp.2d 91 (D.P.R. 1999).  On appeal, appellants challenge three of the court's rulings: (1) the dismissal of discrimination claims under Title I of the ADA and the Rehabilitation Act, (2) the dismissal of retaliation claims under Title V of the ADA, and (3) the rejection of individual liability for certain defendants.  We affirm.

I. <u>Discussion</u>

-2-

We review the district court's dismissal of the complaint de novo, accepting as true all well pleaded allegations and drawing all reasonable inferences in favor of the plaintiffs. See Langadinos v. American Airlines, 199 F.3d 68, 69 (1st Cir. 2000); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).

The Ombudsman's Office for Persons with HIV/AIDS in the Puerto Rico Department of Health was created in 1993 pursuant to an agreement with the United States Department of Health and Human Services, Office for Civil Rights (OCR), Region II.  All three appellants were hired to work in that office: Elesma Oliveras-Sifre as Ombudsman for HIV/AIDS, Carlos Aponte-Ortiz as Strategies and Liaison Coordinator, and Ruben Roman-Cruz as Investigation Analyst.  They were contractual employees whose contracts were not renewed upon expiration in 1997.[1]

Appellants allege that they were "the object of persecution, discrimination, retaliation and harassment," culminating in their termination, because of their advocacy on behalf of individuals with AIDS. The specific conduct alleged to have elicited defendants' unlawful response is described as follows:

---

[1] The First Amended Complaint indicates that at least Aponte, and perhaps Roman as well, were transferred to new positions in the Department of Health.  See Complaint at ¶¶ 7, 8, 43, 44.

The active management performed by [plaintiffs] . . . specifically, the report prepared on the management of medical records of patients with HIV/AIDS in the Fajardo Region; [their] opposition related to the dispositions of Regulation 86 regarding, transfer, disposal, exhumation and cremation of corpses of persons infected with HIV/AIDS; [their] opposition to Regulation 87 regarding transmissible diseases and the dispositions of patients infected with HIV/AIDS; [their] position regarding the harmful effects that the schedule[] changes, resulting from the Health Reform, could have on PASET personnel, including the Regional Immunological Clinics, on the clinical handling of HIV/AIDS patients, caused a retaliation pattern from defendants . . . .

See First Amended Complaint, at ¶¶ 20, 27, 33. Oliveras additionally contends that she experienced retaliation for providing information to the OCR regarding the OCR's investigation on Regulation 87. See id. at ¶ 21.

To state a claim for employment discrimination under Title I of the ADA, a plaintiff typically must show: (1) that he or she suffers from a disability within the meaning of the Act; (2) that he or she was able to perform the essential functions of the job, either with or without reasonable accommodation; and (3) that the employer discharged him or her in whole or in part because of that disability. See Feliciano v. State of Rhode Island, 160 F.3d 780, 784 (1st Cir. 1998); see also 42 U.S.C. § 12112(a).[2]

_____

[2] An employment discrimination claim under section 794 of the Rehabilitation Act is analyzed under the same standards

-4-

The district court initially determined that neither Oliveras nor Aponte established a prima face case of disability discrimination because neither was disabled. Although Roman did have a qualifying disability, blindness, the complaint acknowledged that he had received accommodation for that disability, leaving the AIDS-related allegations as the sole factual foundation for his disability discrimination claims as well.[3] Arguably going above and beyond its duty to assist plaintiffs, the district court <u>sua</u> <u>sponte</u> considered whether plaintiffs had stated a claim under the ADA's "association provision," which protects qualified individuals from employment discrimination based on the "known disability of an individual with whom the qualified individual is known to have a relationship or association," 42 U.S.C. § 12112(b)(4).

---

applicable to Title I of the ADA. <u>See</u> <u>Feliciano</u>, 160 F.3d at 784; 29 U.S.C. § 794(d). We therefore do not separately consider the Rehabilitation Act claim.

[3] Paragraph 35 of the complaint alleges that Roman "was granted a reasonable accommodation (a reader and/or lecturer)" on account of his blindness and that, two months before his dismissal, he was informed that the lecturer's contract would not be renewed. Paragraph 41 alleges that, in addition to the allegations of discrimination applicable to the other two plaintiffs, he had been discriminated against "because of his condition as a blind individual." No specific allegations concerning the nature of that discrimination were alleged and, in any event, the claim is not re-asserted on appeal. Thus, for purposes of this appeal, Roman's claims are the same as the other appellants.

Appellants made no reference to this provision in their complaint.

The district court concluded that the association claim also fell short, however, and we agree. The legislative history of section 12112(b)(4) makes clear that the provision was intended to protect qualified individuals from adverse job actions based on "unfounded stereotypes and assumptions" arising from the employees' relationships with particular disabled persons. See Barker v. International Paper Co., 993 F. Supp. 10, 15 (D. Me. 1998) (citation omitted); see also Den Hartog v. Wasatch Academy, 129 F.3d 1076, 1081-85 (10th Cir. 1997) (discussing provision's legislative history at length and stating that prima facie case includes showing that plaintiff was known by his employer to have "a relative or associate with a disability"). The EEOC also has concluded that this was the intended scope of the provision, as indicated through the three examples of forbidden association discrimination set out in its Interpretive Guidance on this provision of the ADA:

> (1) refusal to hire where the employer makes an unfounded assumption that the employee will miss work in order to care for a disabled relative; (2) discharging an employee who does volunteer work with AIDS victims, due to fear that the employee may contract the disease; and (3) denying health benefits to a disabled dependent of an employee but not to other dependents, even where the provision of benefits to the disabled dependent would result in increased health insurance costs for the employer.

<u>Den Hartog</u>, 129 F.3d at 1085 (citing 29 C.F.R. Pt. 1630.8, App. at 360).

Appellants' contentions do not fit within this framework. They do not allege a specific association with a disabled individual, but contend, in essence, that they were punished for their advocacy on behalf of individuals with AIDS. As the district court recognized, such a claim implicates the prohibition against retaliation contained in Title V of the ADA, <u>see</u> 42 U.S.C. § 12203(a)-(c), not the association provision. <u>See</u> <u>Oliveras-Sifre</u>, 38 F.Supp.2d at 101; <u>see</u> <u>also</u> <u>Barker</u>, 993 F. Supp. at 15. We therefore turn to appellants' second claim on appeal, that the district court erred in rejecting their retaliation claim.

The ADA prohibits discrimination against an individual "because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To establish retaliation under the ADA, a plaintiff must show that: (1) he or she was engaged in protected conduct; (2) he or she was discharged, and (3) there was a causal connection between the discharge and the conduct. <u>See</u>

<u>Soileau</u> v. <u>Guilford of Maine, Inc.</u>, 105 F.3d 12, 16 (1st Cir. 1997).

The district court fully analyzed appellants' retaliation claim in light of this standard, concluding that they failed to plead facts satisfying its first element, participation in protected conduct. The court reviewed the settings covered by the ADA – employment, public accommodations, and the provision of services and benefits by public entities – and concluded that, "as stated in the Complaint, the actions described by Plaintiffs do not relate to any forms of discrimination prohibited by Titles I, II or III of the ADA." <u>See</u> 38 F.Supp.2d at 101-02.

We agree that appellants' vague allegations regarding policy positions they took as employees of the Ombudsman's Office, <u>see</u> <u>supra</u> at 3, are insufficient to demonstrate that they engaged in protected conduct. We reiterate the district court's language:

> It is not apparent to the Court how the management of medical records of HIV/AIDS patients, treatment of corpses of HIV/AIDS inflicted persons, disposition of patients infected with HIV/AIDS, and the scheduling of "PASET personnel" is related to the conduct prohibited by the ADA regarding employment, public benefits, or public accommodations. Without more specific allegations as to how the positions Plaintiffs took as part of their work at the Department of Health opposed conduct made illegal by the ADA, the Court cannot permit their claim to go forward.

38 F.Supp.2d at 102-03 (footnote omitted).[4]  Appellants merely repeat on appeal the same conclusory statements contained in their complaint, providing us no basis upon which to find that the district court erred in failing to translate their allegations into specific conduct protected by the ADA.[5] Although we construe appellants' claims liberally, see, e.g., Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996), it is not our role to conjecture whether an actionable claim lurks beneath their sketchy allegations, see Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988) ("The threshold [for stating a claim] may be low, but it is real . . . ."). We thus affirm the district court's dismissal of appellants' retaliation claims.

Our disposition of the substantive claims makes it unnecessary to consider whether the defendants could be held individually liable under the ADA and Rehabilitation Act.

## II. Conclusion

----

[4] "PASET" is the Program of AIDs Affairs and Sexually Transmitted Diseases of the Department of Health, which also is known as the Ombudsman's Office for Persons with AIDS.

[5] Appellants argue that "[t]he complaint makes specific allegations of retaliatory conduct in response to plaintiffs' conduct in their aid to patients with HIV/AIDS to exercise their rights or enjoyment of any right granted or protected by the ADA and the RA."  They do not, however, specify the rights "granted or protected by the ADA."

Having concluded that the appellants have failed to allege facts that, even when viewed most favorably to them, establish a prima facie case of disability discrimination, we hold that the district court properly dismissed their complaint.

Affirmed.